UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
:
ASYLUM SEEKER ADVOCACY PROJECT et al., :
:
                    Plaintiffs, : 19-CV-6443 (JMF)
:
      -v- : MEMORANDUM OPINION
: AND ORDER
WILLIAM BARR et al., :
:
                    Defendants. :
------------------------------------------------------------------------ X

JESSE M. FURMAN, United States District Judge:

       Plaintiffs, a group of organizations dedicated to helping immigrant families and children, bring this action to challenge removal orders that the Government obtained with respect to unrepresented immigrants without first affording them proper notice of a hearing or a meaningful opportunity to be heard. *See* ECF No. 1 ("Compl."), ¶¶ 1, 35-36, 40-46, 49. In particular, Plaintiffs challenge the lawfulness of *in absentia* removal orders entered pursuant to allegedly deficient notices to appear ("NTAs") before immigration judges. According to Plaintiffs, those NTAs sometimes reflected the incorrect dates of upcoming appearances; were sent to incorrect addresses; did not include the dates, times, or locations of upcoming appearances; or were "sent to children who cannot read English and/or have no control over whether they appear." *See* ECF No. 42 ("Opp'n"), at 3-4. Plaintiffs contend that the process by which unrepresented immigrants may challenge the removal orders — that is, by filing a written motion to reopen — is effectively unavailable to those who "speak limited[,] if any[,] English" and "lack the capacity to read, understand, and comply with the requirements for writing and filing a motion to reopen." Compl. ¶ 57. Accordingly, Plaintiffs argue, "the motion-to-reopen process does not provide

unrepresented individuals facing imminent removal any meaningful opportunity to challenge defects in their *in absentia* removal orders prior to deportation." *Id.* ¶ 60.

Plaintiffs seek both declaratory and injunctive relief. More specifically, they seek a declaration that, under the Due Process Clause of the Fifth Amendment, "all currently unrepresented families and children who were ordered removed *in absentia* on or after May 1, 2014 are entitled, prior to their physical removal, to . . . a hearing before an immigration judge" and, in advance of such a hearing, to access to their immigration files and certain related records. Compl. at 25-26 (Prayer for Relief). And they seek an order that both "requir[es]" the Government to hold hearings as to such persons in order "to determine whether their removal order[s] should be rescinded" and, in advance of such a hearing, "grant[s] each such person" access to their immigration files and certain related records. *Id.* Defendants now move, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss. They argue, among other things, that the REAL ID Act of 2005, 8 U.S.C. § 1252 *et seq.*, prevents this Court from reviewing or otherwise interfering with the *in absentia* removal orders at the heart of Plaintiffs' claims. *See* ECF No. 40 ("Defs.' Mem."). Plaintiffs oppose the motion on the ground that the REAL ID Act's jurisdiction-stripping and jurisdiction-channeling provisions do not apply to the specific facts of this case and, to the extent that they do, are unconstitutional under the Suspension Clause. For the reasons that follow, the Court concludes that the Government has the better argument and that it lacks subject-matter jurisdiction over Plaintiffs' claims.

**LEGAL STANDARDS**

A case must be dismissed pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). In considering a motion to dismiss for lack of

subject-matter jurisdiction, "the district court may consider evidence outside the pleadings," *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd*, 130 S.Ct. 2869 (2010); *see Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002), and must accept Plaintiffs' "material factual allegations" as true, *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992); *cf.* ECF No. 43 ("July 18 Conf. Tr."), at 30 (articulating the Government's contention "that the Court . . . lack[s] jurisdiction *regardless* of the validity of [Plaintiffs'] underlying arguments, whether [the unrepresented immigrant families and children] received notice or not" (emphasis added)). That said, because "[t]he burden of proving jurisdiction is on the party asserting it," *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996) (internal quotation marks omitted), "argumentative inferences favorable to the party asserting jurisdiction should not be drawn," *Balfour Maclaine*, 968 F.2d at 198.

## DISCUSSION

The REAL ID Act of 2005 provides that, "[n]otwithstanding any other provision of law (statutory or nonstatutory), . . . a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). Further, "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States" is "available only in judicial review of a final order under this section. Except as otherwise provided . . . , no court shall have jurisdiction, . . . by any . . . provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact." 8 U.S.C. § 1252(b)(9). As the Ninth Circuit has explained, "[t]aken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue — whether legal or factual — arising from *any* removal-related activity can be reviewed *only* through" a petition for review

filed with an appropriate court of appeals. *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016); *see* 8 U.S.C. §§ 1252(a)(5), (b)(2). Put differently, Sections 1252(a)(5) and 1252(b)(9) channel all challenges to removal orders and removal proceedings to the courts of appeals.

The Second Circuit examined these provisions in *Delgado v. Quarantillo*, 643 F.3d 52 (2d Cir. 2011). In that case, the plaintiff had already been removed from the country once and reentered without inspection. *See id.* at 53. Several years later, she married a U.S. citizen and sought permanent resident status; in connection with that effort, she filed a Form I-212, which, if granted, waives the inadmissibility of a previously removed alien and permits him or her to apply for adjustment of status. *See id.* at 53-54 & n.1. The United States Customs and Immigration Services ("USCIS") denied Delgado's I-212 request and her application for adjustment of status and reinstated the order of removal against her. *See id.* at 54. After unsuccessfully appealing the removal order to the Second Circuit, Delgado brought a mandamus action in the district court "to compel USCIS to make a determination on the merits of her I-212 application, alleging that USCIS denied her application in violation of the [APA]." *Id.* Holding that Section 1252(a)(5)'s "jurisdictional bar applies . . . to preclude . . . an indirect challenge" to an order of removal, and that whether a plaintiff is bringing an indirect challenge turns "on the substance of the relief" sought, the Second Circuit concluded that the district court lacked jurisdiction to hear Delgado's case. *Id.* at 55. The Court did so despite acknowledging that granting an I-212 waiver "would not per se prevent [Delgado's] removal." *Id.* (internal quotation marks omitted). "Obtaining such a waiver," the Court reasoned, was "a necessary prerequisite to her ultimate goal of adjustment of status. . . . [A]n 'adjustment-of-status challenge is inextricably linked to the reinstatement of [an alien's] removal order,' because 'a *nunc pro tunc* Form I-212 waiver of inadmissibility and the adjustment of status to that of [a lawful permanent resident]' would

4

render the reinstatement order 'invalid.'" *Id.* (quoting *Morales-Izquierdo v. Dep't of Homeland Sec.*, 600 F.3d 1076, 1082-83 (9th Cir. 2010)).

Following *Delgado*, district courts in this Circuit — including this Court — have dismissed a wide variety of indirect challenges to removal orders for lack of jurisdiction. *See, e.g.*, *Vidhja v. Whitaker*, No. 19-CV-613 (PGG), 2019 WL 1090369, at *3 (S.D.N.Y. Mar. 6, 2019) (petition seeking a stay of removal while a motion to reopen was pending before the BIA); *Noor v. Homan*, No. 17-CV-1558 (WFK), 2018 WL 1313233, at *3-4 (E.D.N.Y. Feb. 27, 2018) (petition seeking a stay of removal or adjustment of status where "the practical effect of [adjusting] Plaintiff's status . . . would be to void the removal order"); *Singh v. United States Citizenship & Immigration Servs.*, No. 15-CV-1411 (JMF), 2016 WL 1267796, at *5 (S.D.N.Y. Mar. 30, 2016) (application for review of USCIS's denial of an adjustment of status application where a favorable decision would require holding, "at least by implication," that the removal order underlying USCIS's denial was invalid), *aff'd*, 878 F.3d 441 (2d Cir. 2017), as amended (Jan. 9, 2018); *Hu v. Holder*, No. 11-CV-4747 (FB), 2012 WL 2619185 (E.D.N.Y. June 25, 2012) (petition to compel USCIS to adjudicate an application for permanent residency after the filing of several unsuccessful motions to reopen a removal order); *Nieto-Ayala v. Holder*, No. 08-CV-8347 (LMM), 2011 WL 3918156 (S.D.N.Y. Aug. 30, 2011) (mandamus action to compel the Government to extend bond until USCIS adjudicated the asylum application of a petitioner who was subject to a final removal order). *Barros Anguisica v. Decker*, No. 18-CV-7493 (PAE), 2019 WL 3244122 (S.D.N.Y. July 9, 2019), a recent decision by Judge Engelmayer, is particularly instructive here. That case, like this one, involved a due process challenge to an "attempt to remove [a petitioner] pursuant to an allegedly defective NTA." *Id.* at *3. The petitioner sought to stay his scheduled removal until after the BIA decided his then-pending motion to reopen the

5

removal order. The petition, he argued, did not constitute a challenge to the removal order itself because the relief it sought would afford him *only* "a meaningful opportunity for his motion to reopen . . . to be heard by the BIA and not be deported" in the interim. *Barros Anguisaca*, 2019 WL 3244122, at *5. Relying on *Delgado*, Judge Engelmayer rejected that argument, reasoning that the petitioner's claim indirectly challenged his removal order by implying that the immigration court that issued it despite notice defects had done so unlawfully. *Id.*

*Delgado* compels the same result here. Plaintiffs' Complaint and opposition brief are both littered with assertions that the challenged *in absentia* removal orders were issued in violation of a statute and/or the Constitution, "were not properly entered," or are otherwise "unlawful." *See, e.g.*, Compl. ¶¶ 1, 3, 6, 7; Opp'n at 3, 13, 20. It follows that while Plaintiffs may *presently* seek only an order entitling unrepresented immigrants to a hearing, *see id.* at 1, their "ultimate goal" is to challenge the lawfulness of the removal orders themselves, *Delgado*, 643 F.3d at 55. Put differently, the relief that Plaintiffs seek is a "necessary prerequisite" to any administrative challenge to the removal orders. *Id.*; *see* Opp'n at 1 (arguing that relief is necessary because unrepresented immigrants "cannot file a motion to reopen"); *id.* at 8. If the Court grants Plaintiffs the relief that they seek — among other things, an order that has the effect of temporarily barring the Government from acting on certain *in absentia* removal orders — "then the Government would be without a mechanism to enforce the removal order[s]" at least until it can schedule future hearings. *Barros Anguisaca*, 2019 WL 3244122, at *5; *see Freire v. U.S. Dep't of Homeland Sec.*, 711 F. App'x 58, 59 (2d Cir. 2018) (summary order) (reaffirming that Section 1252(a)(5) "removes jurisdiction from the district courts over any challenge [to] the denial of an application for status adjustment of a party who is already subject to a removal order, if the relief requested in the challenge would invalidate the order"). It follows that, in

substance if not form, Plaintiffs challenge the underlying removal orders. Under *Delgado*, that means that this Court lacks jurisdiction to hear their claims.

In arguing otherwise, Plaintiffs rely heavily on the Supreme Court's decision last year in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). *See* Opp'n at 7-8 & n.5. But that reliance is misplaced. In *Jennings*, the petitioner was seeking an individualized bond hearing pending the completion of removal proceedings. *Jennings*, 138 S. Ct. at 838-39. A plurality wrote to independently confirm the Court's jurisdiction to entertain the underlying claims, given, among other things, Section 1252(b)(9)'s limitation on judicial review of legal questions that "aris[e] from" removal orders. *Id.* at 835, 839-40. The plurality found that an immigrant's challenge to the length of his pre-removal detention — like a hypothetical challenge to an assault or other tort that occurs while an immigrant is detained — cannot fairly be said to "aris[e] from" actions taken to remove him. *Id.* at 840. The plurality explained that "cramming judicial review" of such tangentially related questions "into the review of final removal orders" would be an "absurd" exercise of "uncritical literalism," and that to do so would be to "make claims of prolonged detention," which necessarily involve harms that end before the entry of a final order, "effectively unreviewable." *Id.* But that reasoning does not preclude the application of Section 1252(b)(9) (or for that matter, Section 1252(a)(5)) to this case, where Plaintiffs seek to temporarily bar the Government from executing removal orders that it has *already* obtained, as such relief arises from the removal orders themselves. And in any event, the *Jennings* plurality explicitly declined to outline "the scope of § 1252(b)(9)," reasoning instead that no jurisdictional bar existed where a petitioner was "not asking for review of an order of removal . . . [and was] not even challenging any part of the process by which [his] removability [would] be

determined." *Id.* at 841. Here, by asking the Court to force the Government to hold a hearing to consider whether final orders of removal were lawfully entered, Plaintiffs do both.

The other cases on which Plaintiffs rely are distinguishable or unpersuasive (or both) and, in any event, are not binding on this Court. In *Singh v. Gonzales*, 499 F.3d 969 (9th Cir. 2007), for example, the Ninth Circuit held that, "[b]y virtue of their explicit language, both §§ 1252(a)(5) and 1252(b)(9) apply only to those claims seeking judicial review of orders of removal." *Id.* at 978. As discussed above, however, the claims in this case do just that, albeit indirectly. And whatever *Singh* may say about an indirect challenge to an order of removal, this Court is bound by the Second Circuit's holding in *Delgado* that Sections 1252(a)(5) and 1252(b)(9) bar direct and indirect challenges alike. For similar reasons, the Court may not and does not follow *Chhoeun v. Marin*, No. SACV-17-01898 (CJC), 2018 WL 1941756 (C.D. Cal. Mar. 26, 2018), which held that Sections 1252(a)(5), 1252(b)(9), and 1252(g) "narrowly . . . preclude district courts' jurisdiction only where the claim challenges the Attorney General's discrete acts of commencing proceedings, adjudicating cases, and executing removal orders." *Id.* at *4 (internal quotation marks omitted). That may or may not be the law in the Ninth Circuit; but it is not the law in this Circuit. Finally, the Court is not swayed by Plaintiffs' invocation of *Calderon v. Sessions*, 330 F. Supp. 3d 944 (S.D.N.Y. 2018). For one thing, the petitioner there — unlike Plaintiffs here, *see, e.g.*, Compl. ¶¶ 1, 3, 6, 7; Opp'n at 3, 13, 20 — conceded "that the order of removal against him [was] valid and enforceable." *Id.* at 955; *see also id.* (citing counsel's statement that "we are not challenging the underlying order of removal"); *id.* at 956 (noting that petitioner does not "claim . . . a right to remain in the United States."). For another, as another court observed, the holding in *Calderon* ultimately seems to rest on "the fiction" that the petitioner there was "not challenging the execution of [his] removal order[] by seeking to

8

stay" it. *Ashqar v. Hott*, No. 19-CV-716 (TSE), 2019 WL 2712276, at *4 (E.D. Va. June 5, 2019). The Court is unable (and unwilling) to indulge in that fiction here.

That leaves Plaintiffs' alternative argument: that interpreting Sections 1252(a)(5) and (b)(9) to mean that this Court lacks jurisdiction would violate the Suspension Clause. *See* Opp'n at 14. That argument can be swiftly rejected. The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. But this is not a habeas corpus case; it is an action for declaratory and injunctive relief brought by organizational plaintiffs not subject to governmental custody. And, in any event, as Plaintiffs themselves acknowledge, the REAL ID Act does not "suspend" the ability of anyone in custody to seek relief; it merely "channel[s] judicial review" into the courts of appeals by way of a petition for review. Opp'n at 1. The Second Circuit has held that that mechanism is an adequate substitute for the writ of habeas corpus. *See Luna v. Holder*, 637 F.3d 85 (2d Cir. 2011). And more broadly, courts have almost uniformly rejected Suspension Clause challenges to the REAL ID Act on that ground. *See, e.g.*, *Muka v. Baker*, 559 F.3d 480, 484-85 (6th Cir. 2009); *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 114 (2d Cir. 2008); *Iasu v. Smith*, 511 F.3d 881, 887-88 (9th Cir. 2007); *Mohamed v. Gonzales*, 477 F.3d 522, 526 (8th Cir. 2007); *Alexandre v. U.S. Attorney Gen.*, 452 F.3d 1204, 1206 (11th Cir. 2006); *Barros Anguisaca*, 2019 WL 3244122, at *5-7. *But see Gonzalez-Alarcon v. Macias*, 884 F.3d 1266, 1276-78 (10th Cir. 2018).

## CONCLUSION

If true (and the Court has assumed that they are true for purposes of this motion), Plaintiffs' allegations are certainly troubling. According to the Complaint, unrepresented immigrant families and children find themselves in "a classic Catch-22 situation": having been

9

deprived of notice and the opportunity to challenge entry of removal orders in the first instance, the only way they can challenge those orders now is by filing written motions to reopen. Opp'n at 1; *see* Compl. ¶¶ 3-6. But without counsel, English fluency, or an ability to navigate the complex immigration system, they realistically "*cannot file written motions to reopen* to bring those failures [in notice] to light." Opp'n at 1. In light of Sections 1252(a)(5) and (b)(9), however, any remedy for these circumstances lies not in this Court, but elsewhere: in immigration court (by way of a motion to reopen), in the Court of Appeals (by way of a petition for review), or in Congress (by way of changing the law). Accordingly, and for the foregoing reasons, Defendants' motion to dismiss for lack of subject-matter jurisdiction is GRANTED and the Complaint is dismissed.[1]

The Clerk of Court is directed to terminate ECF No. 39 and to close the case.

SO ORDERED.

Dated: September 5, 2019
New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

[1] The Court need not, and does not, reach the Government's alternative arguments with respect to Section 1252(g), Section 1252(f)(1), and standing.